The third case is 22-4178, United States v. Maynard. Mr. Byrne, back for round two. Yes, your honor. Thank you. Good to see you again. Good to see you. May it please the court, my name is Jonathan Byrne and I'm here this morning on behalf of Everett Maynard, the defendant below. This case involves three issues, one that goes to the fairness of Mr. Maynard's trial and two that involve enhancements that were applied at his sentencing. The trial issue involved whether Mr. Maynard's Sixth Amendment Confrontation Clause rights were violated by the district court's requirement that the witnesses at his trial testify while wearing masks that fully cover their nose and mouth. The two sentencing issues involve the application of the obstruction of justice enhancement based solely on the district court's determination that Mr. Byrne should be given the appropriateness of the five level enhancement for serious bodily injury, whether that's supported by the record in this case. I'll start with the Sixth Amendment issue, although of course I'm happy to discuss anything that you have questions about. The trial just set the stage a little bit. The trial happened, started on November 15th of 2021. So it was while we were still in the midst of the COVID-19 pandemic, but it was nearly a year after vaccines had come out and the numbers actually in West Virginia were in kind of a dip at the time when the trial began. The Southern District of West Virginia at the time was operating under a standing order, which dictated mask wearing and things like that for people that were coming to the courthouse. And prior to trial, the district court entered an order directing that everyone involved with the trial would be required to wear masks during the entire time, including witnesses. Mr. Maynard objected to that order and provided a pose an alternative. And that was instead of the more standard masks that completely cover one's face, that witnesses be allowed to testify using a clear face shield. And there's a picture of that in. Why isn't this a classic case of trial management for the district courts? I mean, it would seem to be right in their wheelhorse. Well, I think this is an issue. Certainly the district court had some weighing to do here. I think in the end, the district court did not give enough consideration to the impact on Mr. Maynard's rights to confrontation. This trial was in Logan County, and as I understand it, and I understand that the rate of transmission and risk of transmission was high. And the certainly masks are better than remote and all kinds of courts have upheld remote proceedings during the height of the pandemic. And many, many district courts, almost without number, have upheld the use of masks. So I think we would be a real outlier. If we took the trial court's discretion away, there are four or five or six cases where the district courts have held the use of face masks and it doesn't violate the confrontation clause. And I just think if there ever was a trial management matter which belongs in the district court's expertise, it would be this one. Well, Your Honor, ultimately the issue, it's not an abuse of discretion review. It's a de novo review. And I think the district court in this case downplayed the significance of the impact of masking on Mr. Maynard's confrontation. How can it be an abuse of discretion to be sensitive to the health of witnesses and jurors and others? I always think of how I would feel if I were a district judge and somebody came down with COVID and ended up in the hospital with a terrible respiratory ailment or even worse. And I thought, well, I might have been able to prevent that. And I think part of the function of a district court is to attend to the well-being of jurors and witnesses and all that come before it. If we were to reverse the district court here, it would almost be no matter what the next pandemic brings or whatever, you're running a real risk if you don't impose a mask, if you impose a mask requirement. And it kind of limits the district court's options and really puts them in handcuffs where there would be some future public health emergency coming along and said, oh, no, the 4th Circuit said, no, you can't take these, can't have these masks. There's a real harm involved here. We're not trial judges. We don't have the same feel for these kind of situations. One of us is a trial judge. We've got a trial judge sitting right here. And a very good one. I'm just speaking for myself. He wants my vote. And the lack of knowledge, the lack of sensitivity, being in a trial courtroom, you know, you don't have the same sensitivity to the dynamic. Just a little aside, Chief Justice Rehnquist, one of these days, he went down. He was going to show everybody what a wonderful trial judge he was, the Chief Justice of the United States. And so he presided over the trial and he completely gummed it up because he didn't have trial judge instincts. And the 4th Circuit reversed him. And so what I'm saying is, it just seems to me that trial judges have an intuition and a feel for these kind of situations that an appellate judge lacks.  I understand what you're saying, Your Honor. And I certainly don't want to tie the hands of trial judges because they have to deal with difficult situations. And obviously, the pandemic was unprecedented. But I think part of what sets this case apart is Mr. Maynard did not just flat-out object to a mask requirement and said, yeah, I want to come in. I want to see everybody regardless. He said, we understand this is a problem. Here's an alternative. And it's an alternative that other courts have said strikes that balance between the health concerns raised by the pandemic and the fact that confrontation is a fundamental constitutional right. It is not an engine for determining the credibility of witnesses. It is the constitutionally mandated one. That's the lesson of Crawford. Do we have to find that Crawford undermined the Supreme Court's decision in Craig for you to prevail in this case? Or at least, well, not just undermined it, but overruled it? Because we, I mean, there was confrontation here. It wasn't perfect, but it's not like the witness was testifying via videoconference or behind the shield, you know, a complete shield. You say there was a partial shield, but the witness was in the box. Everybody was able to see the witnesses, save for the mouth. So what was it about not being able to see the facial expressions that somehow makes this case problematic? Well, I think the reason is problematic is you have to look at how this court and other courts of appeals deal with credibility determinations. You know, a jury makes a credibility determination and it's sacrosanct precisely because they are able to observe the witness. And we have decided as a legal system that seeing someone, their manner, the way they react to questions, who they look at, who they don't look at, is important enough that this court and other courts of appeals won't disturb credibility determinations. I think when you cut off. But you got all that. Mr. Maynard got all that. He's able to watch a witness in the box, fidget, who they're looking at, the delays in answering questions, whether they're looking up, looking down, got all that. The only thing that they didn't get is seeing their mouth move. How is that not confrontation that meets the requirements under the case law? Well, I think he got he got some of it. It was it was imperfect. I think was the word to judge Diaz used. And I think it need if it's going to be imperfect, there has to be more of an overriding reason. And I think in a case, a case like that, because. Judges mentioned there's been several courts that have said this. This doesn't violate the confrontation. There's been several that have concluded otherwise. And I think the court that was most clear about it was Thompson, which was the district court in New Mexico that said an unimpeded opportunity to cross-examine adverse witnesses face to face. And in full view of the jury, is court of the Sixth Amendment right to confrontation? And that that was part of why it granted a motion that would require witnesses to remove their mask when they testify. Whatever it is, counsel, the Supreme Court has said that the questions involving cross-examination are not absolutes. That they are subject to the Sixth Amendment right is subject to the imperatives of trial court management. I think it's Van Arsdale where the Supreme Court said that. And when you think of the limitations that are sometimes necessarily imposed on cross-examinations, questions of time, questions of relevance. You can cut off cross-examination if it's going nowhere or it's cumulative or whatever. Or if it's dragging on too long. But the Supreme Court has said that this is not, it's not like the right to counsel. And they distinguish it to cross-examination is a very important right, but it's subject to limitations. And as my colleagues have both pointed out, in this situation, you can assess the tone of the witness's voice and you can see whether it's shifting or squirming around. And you can get a real sense of somebody even with a mask, just from, there's an old thing called body language. The body language comes through. And I don't, I don't think you strip somebody of their human personality by putting a mask on. I certainly wouldn't say that, Your Honor. But I think in the context of a person giving testimony in a courtroom, I think it is important to make sure the jury has all the potential observations that they can get. And again, I think what makes this case different than some other cases that have come out of the COVID situation, that I'm aware of at least, is that defense counsel presented an alternative that would have better preserved Mr. Maynard's rights and still protected the witness. Would have protected the witness, would have protected the jurors who were all still masked. Judge Berger's courtroom had plexiglass panels up to keep people separated. So there's a certain weighing there that the court had to do. But I think in rejecting the alternative in particular, I think the court made the wrong decision on that. In the minute left I've got, I want to jump to the second of the sentencing issues, which is the five-level enhancement for serious bodily injury. The guidelines provide this sort of step, stair-step enhancement for assault that distinguishes between three levels for bodily injury and five levels for serious bodily injury. We don't argue that there wasn't bodily injury in this case. That was part of an element of the offense for which Mr. Maynard was convicted. But the record doesn't show that there was serious bodily injury, which requires extreme physical pain, which is the basis that the district court gave for imposing that enhancement. So the medical records show he had a broken nose in two spots, taken to the hospital, that he's been referred for surgery on his nose. He had a deviated septum about five millimeters to the right, rendered unconscious, that you can see in the video, and you can see a pool of blood pooling under it. Certainly you agree it's bodily injury. But how is it clear for the judge to find that that's serious bodily injury? Because the basis for the district court's conclusion was that he was in extreme physical pain. And there is not sufficient evidence in the record that he was in extreme physical pain. He was certainly in pain, but like from the hospital, he went to the hospital to the emergency room. He was discharged with, what was it, he was given an aspirin and discharged to the local jail. So if he was in truly serious condition, he wouldn't have been discharged to the local jail that quickly. Didn't the district court find that he needed to be taken to the hospital in an ambulance for treatment? She did, Your Honor, yes. Okay. So why isn't that the kind of medical intervention that the enhancement contemplates? Because that's not necessarily indicative of extreme physical pain. And I'd point to the Egbert case that we talked about in the brief where someone was knocked out. And that was the basis. Oh, there must have been extreme physical pain because the person was knocked out. And the court said that wasn't sufficient. This reminds me maybe about my colleagues as well. This reminds me of the George Floyd case where there was just police grossly abusing their position. And it just is a shocking lie to say that this man tripped when the jury verdict, if you look at it, that the poor man's head was rammed against the doorframe and he was dropped on the floor. And as the chief judge points out, he was in the hospital for a good length of time. I mean, it really is a George Floyd situation. At least I couldn't read it and think about it and get into it without that kind of thing. I realize that each case has to be decided on its own merits. But I was, as we all were, horrified by what happened to George Floyd. And I'm frankly horrified by what happened here. I'm not going to dispute that what happened to Mr. Wilfong is horrible. Our argument is that the guidelines have standards and it did not meet the standard necessary to impose that. Let me ask you about that because you said it has standards, but the standards are cached in the alternative. It's either serious bodily injury, which is defined as injury involving extreme physical pain. And then it goes on to talk about protracted impairment of a function of a bodily member, etc. And then it says or requiring medical intervention, such as surgery, hospitalization or physical rehabilitation. Isn't that a separate qualifier? Are you saying that it all ties back to the extreme physical pain? Two things, Your Honor. First, the extreme physical pain is the only basis that was relied upon by the district court. Secondly, the alternative that you listed there, I don't think covers an emergency room visit with a fairly quick discharge to the local jail. There wasn't any evidence of extended injury or that he needed physical therapy or anything like that. And I point out that Mr. Wilfong was a defense witness and the government had the opportunity to ask him about that night and the pain he was in. They never did. He didn't remember. I mean, he didn't remember the events that happened. His memory was not great. That's true, Your Honor. I'll reserve the rest of my time. Thank you, Mr. Byrne. Ms. Schwalbauer? Thank you, Your Honor. Good morning, and may it please the court. Barbara Schwalbauer on behalf of the United States as appellee. This court should affirm the defendant's conviction and sentence. First, because there was no error in the district court's order requiring testifying witnesses to wear face masks to prevent the spread of COVID-19, and because there was no procedural error in the calculation of the defendant's guideline sentence. I'd like to start with the Confrontation Clause issue and respond to a few comments in the questioning earlier, which first is related to the state of COVID in this area at the time of the trial. The standing order that the court itself issued was issued in August of 2021. So this is not a standing order that goes back to the beginning of the pandemic that's recognizing an increase of cases in the area. And similarly, the district court made findings here in this case specifically about the increase in cases of COVID-19 in the district, and made the decision that it was necessary for a face mask to be worn by witnesses in order to protect folks in the courtroom. And the reason why the face mask is what was recommended is because that was what the CDC was recommending at the time, that even vaccinated individuals should be wearing a face mask, and that's in the district court's order. The fact that the defendant offered face shields as an alternative doesn't change the fact that the district court found that face masks were necessary, and the face shields were not sufficient to protect the community. So with respect to that latter conclusion, what was the evidence supporting that, that the face shields would not have worked as effectively as a mask? The district court said that the science at the time said that face shields were not as sufficient as face masks to protect against COVID-19. But where's that in the record? I mean, that's just her, she just knows it because she knows it? That's what the statement is in the order. But regardless of whether or not this court wants to reach the issue of the confrontation clause, it's clear from, as Chief Judge Diaz asked, what is the problem with not seeing the demeanor here? It's clear from Crawford v. Washington that the ability to observe demeanor is not essential to the confrontation clause, right? Because the approved procedure in that case, the jury has no opportunity to observe demeanor. And similarly, even if there had been an error here under the confrontation clause, and certainly there was not, it would have been harmless beyond a reasonable doubt. The defendant here has only alleged a very general argument about credibility being important to the issue of intent. It's interesting that the public health authorities uniformly recommended masks for indoor gatherings. I think it's an interesting question, but the public health authorities have also said face shields are just not as effective. And that advice, those recommendations have been pretty uniform. Yes, Your Honor, that's right. And the CDC at the time was specifically recommending the use of face masks, even for vaccinated individuals to prevent the spread of COVID-19. But again, if this court does not wish to reach this issue, simplest path forward is to find that any error here was harmless beyond a reasonable doubt. The fact that the defendant has not identified any specific credibility issue that was a problem in this case, except for a general point that demeanor is important to credibility and witness testimony is important to the issue of intent. On the perjury, on the obstruction of enhancement, we say, you know, that perjury can't be the sole basis for an obstruction enhancement. And perjury sometimes is kind of a slippery sort of thing. It's notoriously hard to prove. But when you get something like this, where somebody takes the stand and testify that the victim here tripped and that that was the cause of his injuries, that is just a complete and total fabrication and lie. This poor guy's head was smashed against the door. He didn't trip. Try to put the blame on somebody he had badly maimed. You know, and so I what I'm saying is, I think. There can be a case, be a case, and this is certainly one where the perjury is so evident. And so egregious. That it can be utilized as a basis for an obstruction enhancement. Certainly, Your Honor, the false statement here that the defendant made was particularly egregious and clearly willful based on the video evidence. And it certainly satisfies the plain text of the guideline definition for obstruction of justice. He clearly tried to impede the administration of justice via his prosecution by lying about a material issue, the intent level that he had. And it's clear from the video that, you know, there's no way that anyone tripped, especially given the fact that throughout the video, he is berating the R.W., the victim of his crime, to stop making demands, to remember not to make demands. He's clearly being punitive. And in the video, it's very clear, clear evidence of the issue of intent, which is the only one that defendant has really raised as problematic. But with respect to the obstruction of justice enhancement in particular, this court in the United States versus Andrew has, in many other cases, has upheld the adjustment in cases involving false statements. And in Andrew's, the false statement was made by alibi witnesses. It was merely that the defendant let those witnesses testify that was found to be an obstruction of justice. And this court said it went to the very essence of the obstruction of justice enhancement. So the United States certainly thinks there was no error in applying that adjustment and certainly no plain error in applying that adjustment, given that this court has affirmed false statements as within the obstruction of justice enhancement, provided they meet the standard. And this here clearly did. There are no further questions. We'll rest on our briefs. We ask that this court affirm the conviction and sentence. Thank you, counsel. The burn. It's very briefly, Your Honor, because the question of harmless error came up and. As we said in our reply brief, you know, the key issue here was intent. I disagree that the video shows intent. I think that needs to come from other evidence. And part of the other evidence that the government produced was the testimony of officer bias. Who's Mr. Manager partner? He was there that night was involved with Mr. Well, Fong, but had left the room at one point. And just give you an example of where credibility determinations come in. Mr. Bias testified that before Mr. Well, if I'm staying in the hospital, Maynard said to him and pardon my French here, motherfuckers want to talk shit until they're laying in a puddle of their own blood and that that scared officer bias. But in cross-examination, he had forced to admit that that statement was not in his police report and had never come up before. That's a question of whether that statement, which would go to intent ever actually happened. And so I think that goes to the question of harmless error and the role that witness credibility played in this case. I don't think it is as open and shut based on the video as the government wants it to be. The other thing I would. But as it relates to intent, and I know the district judge did not apply the enhancement for pre-planning, but it was argued. And can she consider this as well that when Mr. Maynard stood up, he looked at the camera, he shot his finger at the camera, and he said, tonight's the night. And then you take that video in its totality. And can't she draw the conclusions that what what happened was an intentional act? It may not have been pre-planned such for an enhancement under the guidelines, but it was an intentional act. And view that in light of his testimony, that was not a trip. Isn't that within her, her wheelhouse to determine that as a finder of fact sentencing stage? Are you talking about the obstruction enhancement? Yes, Your Honor. OK. She can she can make that conclusion. And I think if the judge had. Said as a thirty five fifty three a factor, I'm going to enhance your sentence because I think you testified falsely. That's one thing. But again, going back to what I said about guidelines and definitions, the guideline definition guideline says obstruction does not say perjury. The commentary says perjury. And as the government conceded in their brief, perjury and obstruction are not the same offense. This court has said that. And so that's one of those situations where it's the commentary that is broadening the definition of the guideline itself. And so I don't think it's an appropriate basis for a guideline enhancement, whether it could be an appropriate thirty five fifty three a factor. I think is. Probably an interesting question, because I think that goes back to to Dunnigan and what the court said there, whereas where it said if we weren't working with the definition from the commentary, this might be a different question. So I hope that answered your question. It did. Thank you, Your Honor. If there aren't any other questions, I'll rest of my briefs and ask for the relief mentioned there. Thank you, Mr. Byrne. Appreciate both counsel's arguments. In this case, we'll come down and greet you and then move on to our final case.
judges: Albert Diaz, J. Harvie Wilkinson III, Robert S. Ballou